IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**STANLEY K. AIKENS, et al.,**

            **Plaintiffs,**

                                                **CIVIL ACTION**

**v.**

                                                **No.   01-2427-CM-DJW**

**DELUXE FINANCIAL SERVICES, INC.,**

            **Defendant.**

## MEMORANDUM AND ORDER

Pending before the court is a Motion for Order to Determine Mediator's Fees (Doc. 403) filed by the mediator in this case, Larry Rute. For the reasons set forth below, the court holds that it lacks jurisdiction to entertain Mr. Rute's motion. The motion is therefore denied.

**I.     Background Information**

This is an employment race discrimination case. Plaintiffs filed this case on August 23, 2001 and, through a series of amendments, the action became a nationwide putative class action, alleging race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., and 42 U.S.C. § 1981. On May 27, 2004, upon the request of the parties, the court entered an Order for Mediation (Doc. 331), appointing Mr. Rute as mediator. Pursuant to that Order and the parties' agreement, Mr. Rute conducted a series of mediation conferences beginning in June 2004 and concluding in October 2004. At the mediation, plaintiffs, in their individual capacities, were represented by Sloan, Eisenbarth, Glassman, McEntire and Jarboe ("Sloan Firm"), the putative class members were represented by class counsel Foland, Wickens, Eisfeleder, Roper, and Hoffer, P.C. ("Foland Firm"), and defendant was represented by Stinson Morrison Hecker, LLP ("Stinson Firm"). The parties split the mediation fees.

On September 13, 2004, the Foland Firm, through David White, notified the court that the efforts to settle the putative class claims failed. The same day, defense counsel informed the court that, contrary to Mr. White's representations, the mediation successfully settled the case in its entirety. On October 15, 2004, defendant filed a Motion to Enforce Settlement Agreements (Doc. 350). Shortly thereafter, various plaintiffs filed Stipulations of Dismissal with Prejudice. On October 19, 2004, plaintiffs, through the Foland Firm and counsel David White, filed a Cross-Motion to Enforce Individual Settlements or, in the Alternative, Motion for Leave to Provide Notice of Settlement to Putative Class Members (Doc. 352). On November 17, 2004, the only two remaining named plaintiffs —those plaintiffs who had not previously filed stipulations of dismissal —Antrina Carter and Damon Carter filed Stipulations of Dismissal with Prejudice (Doc. 367 & 368). On March 2, 2005, the court dismissed the case in its entirety finding that the Carters' Stipulations of Dismissal with Prejudice "resolved any remaining claims in the case" (Doc. 389). The case was closed that day.

In October 2005, the court reopened the case for the limited purpose of entertaining two motions: defendant's Motion to Enforce Protective Order and for Sanctions (Doc. 395) and a Motion to Intervene filed by plaintiffs in another, related case (Doc. 393). On December 16, 2005, Mr. Rute filed this motion requesting the court direct the Foland Firm to pay his bill for mediation services in the amount of $12,609.37.

**II.     Analysis**

The mediation fees were billed one-half to defendant, one-quarter to the Foland Firm as class counsel, and one quarter to the Sloan Firm as counsel for the individual plaintiffs. Defendant and the Sloan Firm paid their share of the mediator fees. The Foland Firm has not paid its portion of the

-2-

mediation fees. Instead, the Foland Firm contends that it is not obligated to pay the mediation fees because Mr. Rute breached the contractual agreements[1] during the mediation process. Mr. Rute asks the court to order the Foland Firm to pay the outstanding fees, arguing that the Foland Firm has no proper basis to refuse to pay his fees and that the court has the authority to order the Foland Firm to pay the fees pursuant to D. Kan. Rule 16.3[2]. The Foland Firm disputes that D. Kan. Rule 16.3 controls. It argues that the court lacks subject matter jurisdiction over the fee dispute because the dispute is governed by Kansas state law and no diversity exists between the Foland Firm and Mr. Rute.

The underlying litigation —plaintiffs' employment discrimination action —has been resolved and dismissed. Thus, as a threshold matter, the court must determine whether it has jurisdiction to rule on Mr. Rute's motion, determine his fee, and order the Foland Firm to pay the mediation bill.

As courts of limited jurisdiction, the Federal courts possess only the power authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The court's jurisdiction is not to be expanded by judicial decree. *Id.* (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted).

---

[1] The Agreement to Mediate, a copy of which each plaintiff signed, and the Rules of Mediation, a copy of which Mr. Rute expressly agreed to follow in the Agreement to Mediate.

[2] D. Kan. Rule 16.3(e) governs alternative dispute resolution and provides that "[e]xcept when serving pro bono, private mediators shall be compensated at the rate negotiated by counsel and the mediator. The fee shall be divided by agreement of the parties or as ordered by the court."

Here, the underlying claims, under which the court had federal question jurisdiction, have all been dismissed. The court therefore lacks federal question jurisdiction over this dispute. The court also lacks diversity jurisdiction. The court's jurisdiction, then, must rest on the doctrine of ancillary jurisdiction.

The concept of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id*. at 378. The Supreme Court described ancillary jurisdiction as a way "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id*. at 379–80. Ancillary jurisdiction "rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety," *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982), and "may extend to claims having a factual and logical dependence on 'the primary lawsuit.'" *Peacock v. Thomas*, 516 U.S. 349, 355 (1996) (citations omitted). "The basis of the doctrine of ancillary jurisdiction is the practical need 'to protect legal rights or effectively to resolve an entire, logically entwined lawsuit.'" *Id.* (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978)). Ancillary jurisdiction is not a permissive doctrine; rather, it represents the "constitutional limits of federal judicial power." *Owen Equip.,* 437 U.S. at 371. Although a district court's exercise of ancillary jurisdiction is discretionary, the court must be cautious in its willingness to expand its jurisdiction. *Foster v. Bd. of Trs. of Butler County Comm. Coll*., 771 F. Supp. 1118, 1120 (D. Kan. 1991).

The most common situation in which courts have exercised ancillary jurisdiction after the underlying lawsuit has been concluded is to resolve disputes between a party to the lawsuit and that

party's attorneys over the proper amount of fees due the attorneys for work performed in the lawsuit. *See, e.g.*, *Rivera-Domenech v. Calvesbert Law Offices PSC*, 402 F.3d 246, 250 (1st Cir. 2005) ("Courts have rested the exercise of jurisdiction over [attorney-client] fee disputes related to proceedings before them on the doctrine of ancillary jurisdiction."); *Garrick v. Weaver*, 888 F.2d 687, 690 (10th Cir. 1989) (quoting *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982)) ("It is well established that '[d]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, *with respect to the work done in the suit being litigated*, easily fits the concept of ancillary jurisdiction.'") (emphasis in original); *Foster*, 771 F. Supp. at 1120 ("Courts have exercised ancillary jurisdiction over disputes between attorneys and clients over the proper amount of attorneys' fees due to the attorneys for work performed in the underlying litigation."). In the context of attorney fee disputes, the exercise of ancillary jurisdiction is particularly appropriate because courts have "inherent jurisdiction to supervise the bar" and to insure compliance with the reasonableness standard set forth in the attorneys' rules of ethics and professional responsibility. *McGill v. City of Ottawa,* 773 F. Supp. 1473, 1474 (D. Kan. 1991) (citing *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1111 (7th Cir. 1982); *In re Michaelson*, 511 F.2d 882, 888 (9th Cir. 1975)). As this court has noted, "[u]ltimately, courts have a stake in fee contracts because the fairness of the terms reflects directly on the court and its bar." *Id.* (citing *Rosquist,* 692 F.2d at 1111).

The instant case, however, does not involve a dispute between plaintiffs and their attorneys over a reasonable attorney fee and does not implicate the court's duty to maintain the integrity of the bar practicing before it. Rather, it involves a dispute between class counsel and the third-party

mediator over the mediator's fee.  Thus, the attorney fee dispute cases are not directly on point.  Neither Mr. Rute nor the Foland Firm cites any decision addressing whether a court should exercise ancillary jurisdiction over a dispute involving a mediator's fee, and the court, despite conducting extensive research, is unable to locate any such case law.

The Tenth Circuit, however, enunciated a four-factor test for district courts to apply when determining whether to exercise ancillary jurisdiction, which requires the court to consider the following factors:

> (1) an ancillary matter should arise from the transaction that was the basis of the principal proceeding, during the course of the principal proceedings, or as an integral part of the main proceeding; (2) the federal court should be able to determine the matter without a substantial new factfinding proceeding; (3) failing to determine the matter should not deprive a party of any important procedural or substantive right; or (4) the matter should be decided in order to protect the integrity of the principal proceeding or insure that its disposition is not frustrated.

*See Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982).  In the absence of Tenth Circuit precedent relating to mediator fee disputes, the court will consider the four-factor test to determine whether it should exercise ancillary jurisdiction.

First, this matter is not an integral part of the main proceeding.  Although this dispute arose out of the proceedings in the underlying lawsuit, whether Mr. Rute violated the Agreement to Mediate or Rules of Mediation is unrelated to the underlying discrimination claims.  Second, the court would be unable to resolve the fee dispute without substantial factfinding on the breach of contract issue.  These claims may require discovery and can only be resolved after an evidentiary hearing.  Third, the court will not deprive the parties of their rights by declining to decide the fee dispute.  The *parties to this action* are not the individuals involved in the fee dispute.  Mr. Rute was

not a party to the lawsuit —he was merely a private mediator. And Mr. Rute does not seek relief from any plaintiff; he only seeks payment from the Foland Firm, which was not a party to the lawsuit. Even if resolution of the dispute would have a direct impact on plaintiffs, and not just their attorneys, the court does not find that plaintiffs would be deprived of any important procedural or substantive right if the court declines to exercise jurisdiction. Nor will Mr. Rute be deprived of any rights; he may file an action in the Kansas state courts to recover his mediation fee by asserting a state law claim for breach of the Agreement to Mediate.

Finally, the court does not find that this fee dispute must be decided to protect the integrity of the underlying litigation or to insure that its disposition is not frustrated. Nor does the court find that resolution of this fee dispute is necessary to render complete justice to the parties to the lawsuit. This case was settled and the action dismissed almost two years ago. This fee dispute does not threaten the settlement or resolution of the case. After consideration of all of these factors, the court declines to exercise ancillary jurisdiction over this mediation fee dispute.

The court notes that D. Kan. Rule 16.3(e) does not alter its decision. That rule does not confer jurisdiction —ancillary or otherwise —over this dispute. Rule 16.3(e) merely provides that private mediators are to be compensated at the rate negotiated by counsel and the mediator, and that the fee is to be "divided by agreement of the parties or as ordered by the court." D. Kan. 16.3(e). The Rule does not attempt to confer jurisdiction on the court to resolve fee disputes and cannot do so.

For the above-mentioned reasons, the court concludes that it lacks jurisdiction to consider Mr. Rute's motion. As the court is without jurisdiction to decide the motion, the court must deny it.

**IT IS THEREFORE ORDERED** that Larry Rute's Motion for Order to Determine Mediator's Fees (Doc. 403) is denied.

**IT IS FURTHER ORDERED** that this case is closed.

Dated this 22nd day of September 2006, at Kansas City, Kansas.

              **s/ Carlos Murguia**
              **CARLOS MURGUIA**
              **United States District Judge**